**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICES OF DANIEL G. SHAY**
DANIEL SHAY (SBN 250548)
409 Camino Del Rio South, Suite 101B
San Diego, California 92108
*DanielShay@TCPAFDCPA.com*
Telephone: (619) 222-7429
Facsimile: (866) 431-3292

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOURTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KAUFFMAN, on behalf of himself, and all others similarly situated,<br><br>             Plaintiff,<br>     v.<br><br>CALLFIRE, INC., a Delaware corporation,<br><br>             Defendant. | Case No.: **'14CV1333 H    DHB**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *et seq.*** <br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. David Kauffman ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of CallFire, Inc. ("Defendant" or "CallFire"), in negligently, and/or willfully contacting Plaintiff through SMS or "text" messages on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

2. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of the Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

3. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, a federal statute.

4. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1391(b) because Defendant, at all times herein mentioned, was doing business in the County of San Diego, State of California. Further, venue is proper in this district because Plaintiff has resided in this district at all times herein mentioned such that a substantial part of the events giving rise to the claim occurred in this district.

/ / /

# PARTIES

5. Plaintiff David Kauffman is, and at all times mentioned herein was, a resident of the State of California, County of San Diego. He is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (32).

6. Defendant CallFire is a Delaware corporation that maintains its corporate headquarters in Santa Monica, California. CallFire is registered to do business in California as entity number C3526021, and is a "person" as defined by 47 U.S.C. § 153 (32).

7. On information and belief, CallFire provide voice and text connectively to over 100,000 businesses.

8. Plaintiff alleges that at all times relevant herein CallFire conducted business in the state of California and in the County of San Diego, and within this judicial district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. §§ 227 *et seq.*

9. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*
[2] 47 U.S.C. § 227(b)(1)(A)(iii).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

12. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

## FACTUAL ALLEGATIONS

13. One of the newest types of bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

14. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS or "text" message call is successfully made, the recipient's cell phone rings or

---

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).
[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

3

otherwise notes the receipt of the text message, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

15. Unlike more conventional advertisements, such text messages actually costs their recipients money, because cell phone users must frequently pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

16. A text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

17. Over the course of an extended period beginning no later than October 2013, Defendant directed the mass transmission of text messages to cell phones nationwide.

18. On information and belief, Defendant sent these text messages on behalf of thousands of entities by way of automatic dialers without the recipients' prior express consent.

19. In or around October 19, 2013, Plaintiff called the telephone number 800-305-0204 from his cellular telephone. The number ending 0204 was advertised as belonging to a company that gives advice on choosing the winner of sports competitions.

20. A pre-recorded message answered Plaintiff's call. The recording was an advertisement that was asking for money in exchange for advice so Plaintiff immediately hung up.

21. On October 19, 2013 at 12:56 p.m., Plaintiff received an unsolicited text message on his cell phone that read "'5-0' Jonathan Stone. $99 1 month of service. Must go 5-0 today or the season is free. Reply 1019 if interested. 1 month for $99 must go 5-5 or season free."

22. This was the first of no less than 31 (thirty-one) related text messages that Plaintiff received from Defendant since October 19, 2013, including at least 24 (twenty-four) messages from the SMS number 25827, a number belonging to Defendant.

23. Each and every text message received by Plaintiff was generic in nature and soliciting Plaintiff's business.

24. These unsolicited text messages sent to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to send SMS or text messages to Plaintiff's cellular telephone.

25. The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

26. These telephone text messages constituted "calls" under the TCPA that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

27. Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A). Plaintiff believes Defendant obtained Plaintiff's cellular telephone number through a method called "number trapping," which is not a proper way to obtain prior express consent.

28. These telephone calls by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

29. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

**CLASS ACTION ALLEGATIONS**

30. Plaintiff brings this action on behalf of himself and on behalf of and all others similarly situated ("the Class").

31. Plaintiff represents, and is a member of the Class, consisting of all persons within the United States who received any unsolicited SMS or text message from Defendant or its agents on their paging service, cellular phone service, mobile radio service, radio common carrier service, or other service, through the use of any automatic telephone dialing system or artificial as set forth in 47 U.S.C. § 227(b)(1)(A)(3), which SMS or text message sent by Defendant or its agents were not made for emergency purposes or with the recipients' prior express consent.

32. On October 23, 2012, a complaint was filed in the Southern District of California, Case No. 3:12-cv-02575-LAB-WVG alleging substantially similar conduct as alleged here. Accordingly, the class period is tolled.

33. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

34. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using unsolicited SMS or text messages, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

35. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

36. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or Defendant's agents' records.

37. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

   a. Whether Defendant or its agents sent SMS or text messages without the recipients' prior express consent (other than SMS or text messages made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing to any telephone number assigned to a cellular telephone service;

   b. Whether the equipment Defendant, or its agents, used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

   c. Whether Defendant, or its agents, systematically sent SMS or text messages to persons who did not previously provide Defendant with their prior express consent to receive such telephone calls;

   d. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

   e. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

38. As a person that received at least one unsolicited SMS or text message to his cell phone without Plaintiff's prior express contest, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect

the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

39. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

40. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

41. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

42. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**

**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §§ 227 *ET SEQ.***

43. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

44. Each SMS or text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers,

using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention. These text messages were made en masse through the use of a short code and without the prior express consent of the Plaintiff and the other members of the Class to receive such text messages.

45. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

46. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

47. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §§ 227 *ET SEQ.*

48. Plaintiff incorporates by reference the above paragraphs 1 through 42 inclusive, of this Complaint as though fully stated herein.

49. Each SMS or text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention. These text messages were made en masse through the

use of a short code and without the prior express consent of the Plaintiff and the other members of the Class to receive such text messages.

50. Defendant also made telephone calls featuring a prerecorded or artificial voice without the prior express consent of the Plaintiff and other members of the Class to receive such telephone calls.

51. The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

52. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

53. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### PRAYER FOR RELIEF

**Wherefore**, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendant:

### FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

54. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

55. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

56. Any other relief the Court may deem just and proper.

### SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL

10

*Kauffman v. CallFire, Inc.*
CLASS ACTION COMPLAINT

**VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.***

57. As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

58. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

59. Any other relief the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 30, 2014

*/s/ Ronald A. Marron*
By: Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
ALEXIS WOOD
KAS GALLUCCI
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICES OF DANIEL G. SHAY**
DANIEL SHAY (SBN 250548)
409 Camino Del Rio South, Suite 101B
San Diego, California 92108
*DanielShay@TCPAFDCPA.com*
Telephone: (619) 222-7429
Facsimile: (866) 431-3292