**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICES OF DANIEL G. SHAY**
DANIEL SHAY (SBN 250548)
409 Camino Del Rio South, Suite 101B
San Diego, CA 92108
*DanielShay@TCPAFDCPA.com*
Telephone: (619) 222-7429
Facsimile: (619) 431-3292

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KAUFFMAN, on behalf of himself, and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CALLFIRE, INC., a Delaware corporation, and THE SPORTS NETWORK, INC., a New York corporation,<br><br>　　　　　　Defendants. | Case No.: 14-cv-1333-H-DHB<br><br>CLASS ACTION<br><br>**PLAINTIFF KAUFFMAN'S OPPOSITION TO DEFENDANT CALLFIRE, INC.'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11** |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. SUMMARY BACKGROUND ...............................................................................3

III. STANDARD OF REVIEW ....................................................................................7

IV. ARGUMENT ..........................................................................................................8

  A. This Court Must Deny Defendant's Motion For Sanctions Because Plaintiff And His Counsel Thoroughly Investigated Plaintiff's Claim Prior to Filing His Complaint. ..................................................................................................................................8

    1. Rule 11 Sanctions are Not Warranted Because Plaintiff Case is Grounded In Fact and Warranted By Law. ..................................................................................9

    2. Rule 11 Sanctions are Not Warranted because Plaintiff Filed His Complaint for a Proper Purpose ...................................................................................................12

  B. Rule 11 Sanctions Must Be Denied Because Plaintiff and His Counsel Have Never Maintained Frivolous Claims Against CallFire...................................................13

    1. Plaintiff Reasonably Maintains Litigation Based on the FCC's Notice of Apparent Liability for Forfeiture and Recent FCC Citations and Orders. ............14

    2. Plaintiff Is Reasonable in Maintaining Litigation Despite Other Litigation against CallFire. ....................................................................................................15

V. CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Buster v. Greisen*,
   104 F.3d 1186 (9th Cir.1997) ................................................................................ 8

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002) ............................................................................... 8

*Couser v. Pre-Paid Legal Services, Inc.*,
   994 F. Supp. 2d 1100 (S.D. Cal. 2014) ............................................................... 11

*Greeley Pub. Co. v. Hergert,*
   233 F.R.D. 607 (D. Colo. 2006) .......................................................................... 13

*Greenberg v. Sala*,
   822 F.2d 882 (9th Cir.1987) ............................................................................. 8, 9

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*,
   434 F.3d 320 (5th Cir. 2005) .............................................................................. 15

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005) ...................................................................... 8, 9, 10

*Operating Engineers Pension Trust v. A-C Co.*,
   859 F.2d 1336 (9th Cir. 1988) ..................................................................8, 12, 13

*Rinky Dink, Inc. v. Electonic Merchant Systems,*
   No. C13-1347-JCC, 2015 WL 778065 (W.D. Wash. Feb 24, 2015) ................... 5

*Seirus Innovative Accessories, Inc. v. Cabela's, Inc.,*
   No. 09-CV-102 H WMC, 2011 WL 10976624 (S.D. Cal. Aug. 29, 2011) ........ 8, 9, 12

*Woodfork By & Through Houston v. Gavin*,
   105 F.R.D. 100 (N.D. Miss. 1985) ..................................................................... 14

**Rules**

Fed. R. Civ. P. 11 ....................................................................................................2, 8

**Statutes**

47 U.S.C § 227 .................................................................................................................. 1

**Other Authorities**

*In Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991,* Report and Order, 27 F.C.C.R. 1830, 1837 ¶ 18, 1839 ¶20, 1858 ¶ 71 (F.C.C.
Feb. 15, 2012) ................................................................................................................ 1

*In Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991,* Report and Order, 15-72 (FCC July 10, 2015) .............................................. 7, 15
**Statutes**

47 U.S.C § 227 .................................................................................................................. 1

**Other Authorities**

*In Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991,* Report and Order, 27 F.C.C.R. 1830, 1837 ¶ 18, 1839 ¶20, 1858 ¶ 71 (F.C.C.
Feb. 15, 2012) ................................................................................................................ 1

*In Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991,* Report and Order, 15-72 (FCC July 10, 2015) .............................................. 7, 15

## I. INTRODUCTION

Defendant CallFire, Inc.'s ("CallFire" or "Defendant") has filed an unjustified motion for sanctions pursuant to Federal Rule of Civil Procedure 11 that boldly overstates, or otherwise misrepresents, Defendant's position, and is solely aimed at bullying Plaintiff into a dismissal.

Plaintiff's case arises from Defendant's invasion of Plaintiff's privacy through negligently and/or willingly contacting Plaintiff through SMS or "text" messages on his cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C §§ 227 *et seq.,* ("TCPA"). Dkt. No. 10, First Amended Complaint ("FAC"), ¶ 1. Following the investigation of his counsel, Plaintiff filed his initial complaint on May 30, 2014. Dkt. No. 1. That complaint, as well as the FAC, which was filed on October 9, 2014, put forth, *inter alia*, the following facts. On October 19, 2013, Plaintiff called an 800 number following an advertisement he heard on the radio. FAC at ¶ 21. That same day, following Plaintiff's single call to that 800 number, Plaintiff began receiving unsolicited text messages from Defendant CallFire's SMS number 25827. FAC at ¶¶ 25-26.[1] Plaintiff never provided prior express written consent,[2] much less prior express consent, to receive any of these text messages. FAC at ¶¶ 35-37.

In an attempt to mislead the Court on Rule 11 standards, Defendant spends most of its motion inappropriately complaining about Plaintiff's discovery responses and Plaintiff's and his counsel's alleged lack of investigation (which Plaintiff denies). "[Rule 11 motions] should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those

---

[1] Then beginning around December 2014, Plaintiff began receiving text messages from Defendant CallFire's SMS number 313131. *See* Declaration of Ronald A. Marron ("Marron Decl."), ¶ 2, Exhibit 1 (copies of unsolicited text messages received by Plaintiff Kauffman).

[2] As of October 16, 2013, express written consent is required to make any such telemarking calls. *See In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 27 F.C.C.R. 1830, 1837 ¶ 18, 1839 ¶ 20, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

purposes." Fed. R. Civ. P. 11 *Notes of Advisory Committee on Rules* (1993). Thus, as an initial matter, Defendant's sanctions motion is not the proper vehicle for discussing supposed issues with Plaintiff's discovery responses. If Defendant took issue with Plaintiff's discovery responses the proper procedure would have been to file a Joint Motion for Determination of Discovery Dispute with the Honorable David H. Bartick. But Defendant chose not to. Plaintiff maintains his discovery responses are adequate and provided more than enough detail regarding Plaintiff's claims. Marron Decl., ¶ 3 (Plaintiff produced 413 pages with his first document production, which included, *inter alia,* pre-litigation emails between Plaintiff and Sirius radio whereby Plaintiff inquired about the advertiser who ran the 800 ad on the radio). Like Defendant, what Plaintiff did not provide in discovery were any legal arguments and or/conclusions (i.e., work product) made by his attorneys. *See* Marron Decl., ¶ 4. But this is beside the point, and not relevant to a determination regarding Rule 11 sanctions.

Defendant's motion for sanctions should only be viewed as another one of Defendant's attempts to escape the consequences of its actions through frivolous motion practice. In earlier proceedings, this Court denied Defendant's motion to dismiss Plaintiff's FAC stating that "the Court has not determined whether CallFire is a common carrier or not" and finding that "Plaintiff's complaint contains sufficient facts to state a claim under the TCPA." *See* Dkt. No. 23, Order denying Defendant CallFire's Motion to Dismiss, p. 7, ll. 5-6, 9.[3] Unable to gain a dismissal, almost a year after Plaintiff originally filed his case, the case was able to proceeded to discovery following the parties' Early Neutral Evaluation ("ENE") Conference on February 24, 2015 and 26(f) Conferences on March 18, 2015 and March 27, 2015. Despite representations from the Defendant that it would informally produce the records Plaintiff would need to evaluate

---

[3] While Defendant believes it "established its status as a common carrier that simply transmits messages imitated by its subscribers" at the motion to dismiss stage (Def.'s Mot. at p. 1, ll. 8-10), Plaintiff strongly disagrees. Plaintiff's position is consistent with the Court's ruling that CallFire's status as a common carrier has not been decided. *See* Dkt. No. 23, p. 7, ll. 5-6, 9.

the case, Defendant did not provide the bulk of these documents until June 12, 2015 through formal discovery.[4]

Unlike Defendant, Plaintiff has not filed a single frivolous pleading. Every pleading filed by Plaintiff has been in accordance with the Federal Rules of Civil Procedure. Now again, Defendant has wasted the valuable time and resources of Plaintiff, as well this Court by filing a Rule 11 motion for sanctions, which Plaintiff must oppose. Defendant's motion is frivolous in its own right and keenly timed to coincide with both class discovery deadlines and the briefing of Defendant's premature motion for summary judgment.

Accordingly, and as address fully below, this Court must deny Defendant's motion for Rule 11 sanctions because: (1) Plaintiff's counsel thoroughly investigated Plaintiff's claim prior to filing; and (2) Plaintiff has not maintained a frivolous cause of action, case, or pleading against Defendant.

## II.    SUMMARY BACKGROUND

Plaintiff filed his initial complaint alleging violations of the TCPA on May 30, 2014. Dkt. No. 1.[5] On October 9, 2014, Plaintiff filed his FAC naming The Sports Network as an additional defendant. *See* Dkt. No. 10, FAC. As stated in his FAC, Plaintiff called the number 800-305-0204 from his cellular telephone on October 19, 2013. *See* Dkt. No. 10, FAC ¶¶ 21-22. Plaintiff immediately hung up when he reached a recording asking for money in exchange for advice. *See* Dkt. No. 10, FAC ¶¶ 23-24. That same day, Plaintiff began receiving unsolicited text messages, which did not provide for an opt-out or "stop" method. *See* Dkt. No. 10, FAC ¶¶ 25-26, 37. Some of the text messages were from the SMS number 25827. *See* Dkt. No. 10, FAC ¶ 25. After running a simple Internet search, Plaintiff discovered that the SMS number belonged to Defendant

---

[4] The parties, through counsel, are in the process of meeting and conferring over the sufficiency of Defendant's document production and discovery responses. Marron Decl., ¶ 5.

[5] Prior to filing, Plaintiff and his attorneys conducted a thorough investigation. Marron Decl., ¶¶ 3, 6.

CallFire. *See* Dkt. No. 10, FAC ¶ 26.  Plaintiff did not provide Defendant consent to receive the calls. *See* Dkt. No. 10, FAC ¶¶ 28-29, 35-37.

On November 17, 2014, prior to the commencement of discovery and pursuant to Civil Local Rule 40.1(f),[6] Plaintiff filed a notice of related cases, specifying that his putative class action *may be* related to four other United States District Court class actions involving violations under the TCPA: *Couser v. Pre-Paid Legal Services, Inc.,* in the Southern District of California (No. 3:12-cv-02575-LAB-WVG (S.D. Cal.)); *Rinky Dink, Inc. v. Electronic Merchant Systems, Inc.,* in the Western District of Washington (No. C13-1347-JCC); *Luna v. Shac, LLC*, in the Northern District of California (No. 5:14-v-00607-HRL (N.D. Cal.)); and *Shay v. CallFire, Inc.*, in the Southern District in California (No. 3:14-cv-01257-L-WVG (S.D. Cal.)). *See* Dkt. No. 15, Plaintiff's Notice of Related Cases.  Following that filing, this Court issued an order declining transfer because the cases *were not related*. *See* Dkt. No. 22.  Specifically, the Court distinguished Plaintiff's action from the other cases, finding:

> "The plaintiffs in each case are different individuals, and none of the defendants are the same except one, CallFire, Inc.  The respective plaintiffs are represented by different counsel.  The cases do not arise from the same transactions or events: whereas *Couser's* case was about alleged telephone calls she received on approximately 40 occasions, (*Couser*, Dkt. No. 25, FAC, ¶ 30), Kauffman's allegations arise out of 31 text-based SMS messages, (Kauffman, Dkt. No. 10, FAC, ¶ 25).  Also, the calls in *Couser* were alleged to be unsolicited, (*Couser,* FAC, ¶¶ 24-25), but the text messages in Kauffman were alleged to begin after Kauffman dialed a telephone number that purported to give advice on choosing the winner of sports competitions." (*Kauffman*, FAC, ¶¶ 21-22)." (Dkt. No. 22) ¶¶ 2-11."

Dkt. No. 22 (Order declining transfer). Also pertinent is that the Honorable Larry Alan Burns presided over the *Couser* case and was in a better position than Plaintiff's counsel to discuss the cases, which is likely why Judge Burns "previously declined to accept transfer of the *Kauffman* case on June 12, 2014, [after] having determined that *Kauffman*

---

[6] Civil Local Rule 40.1(f) requires "whenever counsel has reason to believe that the pending action . . . is related to another pending action . . . (whether pending, dismissed, or otherwise terminated), counsel" must file a notice of related cases.

was not related to *Couser*." Dkt. No. 22, p. 1.

Around that same time, following briefing on Defendant's motion to dismiss, this Court declined the opportunity to resolve the dispute regarding the common carrier status of the Defendant. *See* Dkt. No. 23. Instead, this Court stated that "[e]ven if the court were to take judicial notice of CallFire's FCC listing…it would not be clear at this stage whether CallFire is a common carrier." Dkt. No. 12 at p. 6. The Court further denied Defendant's motion finding that "Plaintiff's complaint contains sufficient facts to state a claim under the TCPA." *Id.* at p. 7.

On February 24, 2015, the court held an ENE Conference, but the case did not settle. Dkt. No. 30. That same day, the District Court in Washington found that CallFire, who is a Defendant in multiple cases for TCPA violations, was a common carrier and was not liable for TCPA violations because, in the circumstances presented *in that matter*, CallFire did not have a "high degree of involvement." *Rinky Dink, Inc. v. Electonic Merchant Systems,* No. C13-1347-JCC, 2015 WL 778065, at *7 (W.D. Wash. Feb 24, 2015). It is important to note that the court found irrelevant Callfire's form 499 filing, which according to Callfire made them a common carrier, and did not address whether CallFire was aware of unlawful activity such that liability was justified because the plaintiff in that case did not make that argument. *Rinky Dink, Inc.*, 2015 WL 778065, at *7. That case, however, is currently on appeal in the Ninth District Court of Appeals. *Rinky Dink, Inc. v. Electonic Merchant Systems,* No. 15-35270 (9th Cir.) filed on April 8, 2015.

Following the ENE Conference, the parties conducted their Rule 26(f) Conference on March 18, 2015 and March 27, 2015. Thereafter, on April 13, 2015, the Court, in declining to bifurcate discovery, ordered class discovery to be completed by July 9, 2015. *See* Dkt. No. 34, Scheduling Order. With less than 3 months to conduct any class discovery, Defendant has used discovery as a weapon to bombard Plaintiff with an undecipherable discovery production and frivolous and otherwise premature motions. By way of example, Defendant's June 12 production comprised of 36,109 documents that contained native files consisting of inconsistent/incoherent Bates-stamped

documents, spreadsheets with absolutely no explanations or labeling regarding the nature of the document and no reference to what documents were responsive to what specific requests. Marron Decl., ¶ 7. Upon seeking explanations for the confusingly and unorthodox method of production, Defense counsel admitted the Bates-stamped images did not accurately correlate with the native files they have produced. For example, the document CallFire_Kauffman 004011 which says "Produced Natively" is actually native document CallFire_Kauffman 004074. *See* Marron Decl., ¶ 7, Exhibit 2. There was no way Plaintiff's counsel could have known this without further explanation from the Defendant. *Id.* This type of responses further obfuscates discovery and misguides the process.

Finally, on June 25, 2015, while Plaintiff was only three weeks in to the task of reviewing over 36,607 files, Defendant had the gull to move to sanction Plaintiff and Plaintiff's counsel for essentially not adhering to attorney representations and a self-serving website when it comes to how CallFire operates, when those issues are traditionally left to experts. Litigation allows parties to conduct discovery and take depositions to receive more information than "what is publically available" or provided to the public in a self-serving fashion. If Defendant's position was true, there would be no need for the discovery process. Likewise, Defendant's position that Plaintiff or his counsel should have created a fake account to try out Defendant's service is a non-starter because Plaintiff's counsel did thoroughly investigate Plaintiff's claims prior to the filing of the lawsuit, and did not need to create a fake account to do that.

Moreover, what is most absurd is that Defense counsel is more than aware of the valid nature of Plaintiff's suit. In a recent telephone conversation with counsel for Defendant, it was admitted that after visiting the website Joewiz.com,[7] and either calling into a 800 number or otherwise providing his personal cellphone on the website, he has received unwanted text messages similar to the Plaintiff. Marron Decl., ¶ 8. One would

---

[7] Discovery revealed that Joewiz.com was a customer of CallFire, and also "sent" the unsolicited text messages to Plaintiff. *See* Marron Decl., ¶ 8.

wonder why this customer is still allowed to send text messages given this case, as Defendant has pointed out, was filed over a year ago. Why did CallFire not terminate its customers' services after it knew their customers were sending illegal text messages? Why are there not more precautions? CallFire insists it does everything it can to prevent TCPA violations, yet when those violations occur, CallFire turns the other cheek and hides behind a fallacy that it is a common carrier.

Also pertinent to Plaintiff's position to continue to prosecute his case was a Notice of Apparent Liability for Forfeiture against Dialing Services, LLC issued on May 8, 2014 by the Federal Communications Commission ("FCC"). Marron Decl., Exhibit 3. Stemming from a 2012 investigation, the FCC found that Dialing Services violated the TCPA despite Dialing Services' position that it offered robocalling services to third-parties who otherwise control the content and the timing of the messages. *See id. generally.* Additionally, and most recently, three other similar companies and/or competitors of CallFire were issued Citations and Order from the FCC notifying them of TCPA violations and their duty to comply with the law. Marron Decl., Exhibits 4 (¶ 4), 5 (¶ 4), 6 (¶ 4). *See also In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 15-72 (FCC July 10, 2015) available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (last visited on July 13, 2015).

### III.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 11, "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual contentions have evidentiary support or, if specifically so identified,

will likely have evidentiary support after a reasonable opportunity for further investigation or discovery...." Fed. R. Civ. P. 11.

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Sanctions are reserved for "rare and exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Id*. at 1344. "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." *Id.*; *see also Seirus Innovative Accessories, Inc. v. Cabela's, Inc.,* No. 09-CV-102 H WMC, 2011 WL 10976624, at *2 (S.D. Cal. Aug. 29, 2011).

## IV.   ARGUMENT

**A. This Court Must Deny Defendant's Motion For Sanctions Because Plaintiff And His Counsel Thoroughly Investigated Plaintiff's Claim Prior to Filing His Complaint.**

In addressing Rule 11, "district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually "baseless" from an objective perspective, and (2) if the attorney has conducted "a reasonable and competent inquiry" before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citing *Buster v. Greisen,* 104 F.3d 1186, 1190 (9th Cir.1997)).

"The first situation occurs where a litigant makes a 'frivolous filing where he files a pleading which no competent attorney could believe was well grounded in fact and warranted by law.'" *Seirus Innovative Accessories, Inc.*, 2011 WL 10976624, at *2 (quoting *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir.1987)). "To determine if a complaint is frivolous, the court must examine (1) whether the complaint is legally or factually baseless from an objective perspective and (2) if the attorney conducted a reasonable and competent inquiry [before] signing and filing it." *Seirus Innovative Accessories, Inc.*, 2011 WL 10976624, at *2 (citing *Holgate v. Baldwin*, 425 F.3d 671, 675-76 (9th Cir. 2005)).

"The second situation occurs when a litigant files a pleading or paper for an

8

"'improper purpose,' such as personal or economic harassment.'" *Seirus Innovative Accessories, Inc.*, 2011 WL 10976624 at *2 (quoting *Greenberg*, 822 F.2d at 885).

Here, Plaintiff has done neither of the above situations. Plaintiff brought this action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant, in negligently, and/or willfully contacting Plaintiff through SMS or "text" messages on Plaintiff's cellular telephone without consent, therefore acting in violation of the TCPA. As an individual who received many unsolicited text messages from two of Defendant's SMS codes, Plaintiff has standing to pursue his claims. The allegations contained in Plaintiff's complaint are based upon Plaintiff's personal knowledge as to his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys. Dkt. No. 10, FAC, ¶ 1. As discussed more fully below, because Plaintiff's complaint is legally and factually sound from an objective perspective, Plaintiff's counsel conducted a reasonable and competent inquiry, and this case was not filed or maintained for an improper purpose, Defendant's request for Rule 11 sanctions must be denied.

### 1. Rule 11 Sanctions are Not Warranted Because Plaintiff Case is Grounded In Fact and Warranted By Law.

Sanctions are not warranted because (1) Plaintiff's complaint is not legally or factually baseless from an objective perspective and (2) Plaintiff's counsel conducted a reasonable and competent inquiry before signing and filing it. *See Holgat*, 425 F.3d at 675–76.

Viewed objectively, Plaintiff's counsel did everything a reasonable and competent attorney would do prior to signing and filing Plaintiff's complaint including establishing the chain of events that lead to the Plaintiff receiving the SMS messages. That timeline established that Plaintiff called 800-305-0204 after hearing a radio advertisement. *See* Dkt. No. 10, FAC ¶ 22. In calling that 800 number, Plaintiff reached a pre-recorded message asking for money in exchange for advice, so Plaintiff not interested, immediately hung up. *See* Dkt. No. 10, FAC ¶¶ 22-24. The same day, Plaintiff received the first of over 31 text messages sent to his cell phone, at least 24 of those messages

9

came from the SMS number 25827, which belongs to Defendant CallFire. *See* Dkt. No. 10, FAC ¶¶ 25-26. Also, as noted earlier, Plaintiff continued to receive additional text messages from another SMS code (313131) that also belongs to Defendant. *See* Marron Decl., Ex. 1. All of the text messages were generic in nature and impersonal. *See* Dkt. No. 10, FAC ¶ 31. Every text message sent to Plaintiff was unsolicited – meaning without consent because Plaintiff never provided his number to Defendant and never provided a signed authorization agreeing to receive text messages *See* Dkt. No. 10, FAC ¶¶ 36, 37.

Further, without wavier of any attorney-client privilege or attorney work product, Plaintiff states the following. After receipt of the unsolicited text messages, Plaintiff ran an Internet search for the number and discovered that it was linked to CallFire, Inc. Plaintiff also emailed Sirius Radio to inquire about the entity who placed the sports betting advertisement on the radio – to which Sirius responded The Sports Network. It is reasonable for Plaintiff to draw from this series of events that SMS messages from CallFire's 25827 number were linked to him calling the 800 number because prior to making that call, Plaintiff had never heard of or contacted Defendant. These factual allegations have already satisfied this Court as made clear in its order denying Defendant's motion to dismiss. *See* Dkt. No. 23, Order denying Defendant CallFire's Motion to Dismiss.

Furthermore, filing a complaint alleging Defendant's violation of the TCPA is reasonable because: (1) the telephone number that Defendants, or their agents, called was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C §227 (b) (1); (2) the text messages constituted "calls" under the TCPA that were not for emergency purposes as defined by 47 U.S.C. §227 (b) (1) (A) (i); and (3) Plaintiff did not provide Defendants or their agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C §227 (b)(1)(A). *See* Dkt. No. 10, FAC. Viewed from an objective perspective, this investigation alone cannot be considered factually baseless as to warrant Rule 11 sanctions. *Holgate*, 425 F.3d at 675-676.

Moreover, Plaintiff's decision to refrain from signing up for Defendant's services with a faux account should not result in sanctions. Defendant's motion repeatedly asserts that Plaintiff should be subject to sanctions because they did not investigate CallFire's self-proclaimed common carrier status on the CallFire website. But that is not germane to this issue of sanctions, and in any regard Plaintiff and his counsel have visited the CallFire website and did not find it necessary to sign up for an account.

Compounding its ineffective reasoning, Defendant suggests that Plaintiff should have established "a free test account to determine the capacity and capabilities of CallFire's service." *See* Def.'s Mot. at p 1. However, when a consumer clicks on the link which says "sign up for free" they are then prompted to choose from four payment options. *See* Marron Decl., ¶ 13. Even the least expensive "pay as you go" option requires the consumer to sign up and provide personal information, as well as provide consent to any terms listed in CallFire's agreement. *See* Marron Decl., ¶ 13, Exhibit 7. Plaintiff filed a complaint in which he asserts Defendant violated the TCPA by sending unconsented to, SMS messages to his cellular telephone. Yet, Defendant suggests that because Plaintiff did not voluntarily go on the CallFire website, consent to CallFire's terms, provide personal information, and sign up for the "free service", Plaintiff and his counsel did not make a reasonable inquiry prior to filing the pleading. This reasoning is backwards, and no reasonable attorney would find that failing to do so in light of all the other aforementioned facts, would warrant sanctions against Plaintiff.

Additionally, other pre-filing investigation led Plaintiff to discover other existing litigation against CallFire, Inc. By the time Plaintiff filed his complaint, the Honorable Larry Alan Burns had already denied CallFire's motion dismiss in the *Couser* case, including its "common carrier" argument in which the Court stated "By CallFire's own words, it receives numbers from its customers and it transmits or delivers a recorded message to those numbers. That essentially makes it a caller. . . " *Couser v. Pre-Paid Legal Services, Inc.*, 994 F. Supp. 2d 1100, 1103 (S.D. Cal. 2014). Therefore, the language order denying CallFire's motion to dismiss in the *Couser* case only provided support for the Plaintiff's case.

Further, prior to the filing of Plaintiff's case and throughout the pending litigation, Plaintiff's counsel have taken notice of the other TCPA complaints filed against CallFire. Most recently in May 2015, two other TCPA class actions were filed against CallFire. *See* Marron Decl., ¶ 14.

Despite Defendant's "I cannot be held liable" position, that every defendant naturally takes, Plaintiff is still entitled to proceed with his case and it is unreasonable for any attorney to retreat from filing a complaint or otherwise pursue a case simply because the defendant claims it cannot be held liable. In this instance, imposing Rule 11 sanctions would conflict with the primary duty of Plaintiff's counsel to represent the Plaintiff zealously. *See Operating Engineers Pension Trust*, 859 F.2d at 1344; *see also Seirus Innovative Accessories, Inc.*, 2011 WL 10976624, at *2.

Simply because CallFire believes the only suitable pre-filing investigation would have been signing up a faux CallFire account, is no reason to impose sanctions on Plaintiff or his counsel. *Operating Engineers Pension Trust,* 859 F.2d at 1345. Thus, in light of the aforementioned facts, Plaintiff's case is not legally or factually baseless from an objective perspective and Plaintiff's counsel conducted a reasonable and competent inquiry before signing and filing it. Therefore, Defendant's request for sanctions must be denied.

### 2. Rule 11 Sanctions are Not Warranted because Plaintiff Filed His Complaint for a Proper Purpose

The second prong courts use to determine if Rule 11 sanctions are warranted is whether a "litigant files a pleading or paper for an 'improper purpose,' such as personal or economic harassment." *Seirus Innovative Accessories, Inc.*, 2011 WL 10976624, at *2. Here, Plaintiff, through the filing of his FAC, on behalf of himself and a class of persons similarly situated, seeks to hold Defendant accountable for its blatant violations of the TCPA in which Plaintiff and putative class members' privacy was violated after receipt of unsolicited text message after unsolicited text message, bombarded them over and over again with unsolicited advertising.

The proper purpose for pursuing litigation against Defendant was reaffirmed when

this Court denied Defendant's motion to dismiss. *See* Dkt. No. 23. In that Order, this Court held that Plaintiff's FAC met the *Iqbal* standard because the complaint contained "sufficient facts to state a claim under the TCPA." *Id.* at 7. This Court further held that the plain language used in the TCPA, coupled with the factual allegations provided in Plaintiffs' FAC were sufficient to proceed with litigation. *Id.* Specifically, this Court held true that "Plaintiff alleges that he knew the SMS code associated with the text messages belonged to Defendant CallFire because an internet search identified CallFire as the Owner." *Id* at 4.

Despite the factual allegations pleaded by Plaintiff being held as sufficient to state a claim, Defendant now moves to sanction Plaintiff and his counsel for filing the very same filing. Moving for sanctions at this point can only be construed as a bullying tactic that is aimed at forcing the Plaintiff to fold into dismissing his claims. However, Rule 11 motion for sanctions "should never be employed as a means to achieve some tactical advantage." *Greeley Pub. Co. v. Hergert,* 233 F.R.D. 607, 611 (D. Colo. 2006). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust,* 859 F.2d at 1345. Even if Plaintiff can temporarily suspend belief briefly enough to believe that Defendant's proposed sanctions are not a bad faith tactic, it is not warranted to impose this "extraordinary remedy" based on facts that this Court has previously accepted as true. *Id.*

Again, for these reasons, this Court must deny Defendant's motion for sanctions because Plaintiff did not file his case, nor does he maintain his case, for an improper purpose.

**B. Rule 11 Sanctions Must Be Denied Because Plaintiff and His Counsel Have Never Maintained Frivolous Claims Against CallFire**

An "[a]ttorney who signs a document is obligated not only to conduct reasonable investigation into the facts before filing, but also to continually review, examine, and reevaluate his position as the facts of the case come to light; if attorney subsequently becomes aware of information or evidence which reasonably leads him to believe that there is no factual or legal basis for his position, giving due regard to the standard of

13

*Kauffman v. CallFire, Inc., et al.,* No. 14-cv-1333
PLAINTIFF KAUFFMAN'S OPPOSITION TO MOTION FOR SANCTIONS

proof, then that attorney is under obligation to reevaluate earlier certification of the cause under Rule 11." *Woodfork By & Through Houston v. Gavin*, 105 F.R.D. 100, 104 (N.D. Miss. 1985).

### 1. Plaintiff Reasonably Maintains Litigation Based on the FCC's Notice of Apparent Liability for Forfeiture and Recent FCC Citations and Orders.

As discussed briefly above, on May 8, 2014, the FCC issued a Notice of Apparent Liability for Forfeiture against Dialing Services, LLC which found, after approximately two years of investigation, that Dialing Services "willfully and repeatedly violated [the TCPA] by making 184 pre-recorded message calls to mobile phones for non-emergency purposes without the prior consent of the called party." *See* Marron Decl., Exhibit 3. "Whether one uses the term 'make' or 'initiate,' the fact is that Dialing Services is directly involved in the phone calls it dials for its clients." *See* Marron Decl., Exhibit 3 at ¶ 18.

Similar to CallFire's services, Dialing Services "[o]ffers a robocalling service to various third-party clients[]" [and] The Company advertises that is able to make millions of robocalls for its clients: '[r]each thousands, hundreds of thousands or even millions of customers with your personal message.'" Marron Decl., Exhibit 3 at ¶ 6.

Like Dialing Services, Defendant's home page, *www.Callfire.com*, claims "[o]ver 2 Billion Messages Delivered," "[r]each more customers and be a part of the next milestone," "[u]se text and phone call reminders to develop customer relationships and alert them to new opportunities," and "[e]asily send personalized messages to all of your prospects and customers in minutes, not hours." *See* Marron Decl., Exhibit 8.

Thus, in light of the Notice of Apparent Liability for Forfeiture against Dialing Services, Plaintiff (and his counsel) are reasonable to maintain the action against CallFire. Further, as discussed above, the FCC on May 4, 2015 issued three separate Citation and Order against three autodialer companies similar to Defendant – Call-Em-All, LLC, Ifonoclast, Inc. d/b/a Phonevite, and M.J. Ross Group, Inc. d/b/a PoliticalRobocalls.com. *See* Marron Decl., Exhibits 4-6.

Further, Plaintiff desire to pursue his class action TCPA case cannot be

14

punishable by Rule 11 sanctions. Less than one business day ago, on July 10, 2015, the Federal Communications Commission ("FCC") issued a Declaratory Ruling and Order that stated "whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them." *In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 15-72 (FCC July 10, 2015) available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (last visited on July 13, 2015). Thus, Plaintiff's desire to purse his claim against CallFire, a self-proclaimed common carrier, cannot be met with sanctions.

### 2. Plaintiff Is Reasonable in Maintaining Litigation Despite Other Litigation against CallFire.

Under Rule 41(a)(1), " The plaintiff has an absolute right to dismissal and the effect of the dismissal is to put the plaintiff in a legal position as if he had never brought the suit." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.,* 434 F.3d 320, 324 (5th Cir. 2005). "Ultimately, a Rule 41(a)(1) dismissal is not a 'final judgment.'" *Harvey Specialty & Supply, Inc*. 434 F.3d at 324.

Plaintiff will not be bullied into dismissal simply because the plaintiffs in *Couser*, *Luna,* and *Shay* requested <u>*voluntary*</u> dismissals in those cases. Defendant contends that sanctions are appropriate where "a second counsel recommends that they request voluntary dismissal of the complaint as this "suggests that first counsel] did not conduct a reasonable inquiry" Def.'s Mot. at 8 (citations omitted). However that argument is not applicable here, and even if it was it would cut both ways. Since the filing of Plaintiff's case, at least three other TCPA class actions have been filed against CallFire. Marron Decl., ¶¶ 14, 16. Did the plaintiff's counsel in those other cases violate Rule 11 in filing their cases? The answer is simple – no. It is outside the intent of Rule 11 to sanction a Plaintiff strictly because a plaintiff in a separate action preferred to receive an individual cash payout or other incentive for dismissal instead of pursuing the case, or otherwise

chose to dismiss the case. Mr. Kauffman and his counsel had zero involvement in the other cases.

This Court's reluctance (and ultimate denial) to relate these cases, as well as the fact that none of those voluntarily dismissed cases ever reached a judgment based on the merits of the claims, is further proof that the outcomes of these cases should not determine the merits of Plaintiff's case and definitely cannot be used to warrant the extraordinary measure of imposing Rule 11 sanctions.

## V.  CONCLUSION

The extraordinary measure of Rule 11 sanctions are not warranted here despite Defendant's best efforts in bullying Plaintiff to dismiss his case. Here, both Plaintiff and his counsel thoroughly investigated Plaintiff's claims prior to filing his initial complaint and FAC. Further, this Court has recognized Plaintiff's FAC was grounded and warranted by law when it denied Defendant's motion to dismiss. The same order, which this Court found Plaintiffs factual allegations sufficient to support their TCPA claims, should be further proof that Plaintiff did not file the complaint for improper purpose. Thus, for all of the reason discussed, this Court must deny Defendant's motion for Rule 11 sanctions.

Dated:       July 13, 2015                */s/ Ronald A. Marron*
                                          By: Ronald A. Marron
                                          **LAW OFFICES OF RONALD A. MARRON**
                                          RONALD A. MARRON
                                          SKYE RESENDES
                                          ALEXIS WOOD
                                          KAS L. GALLUCCI
                                          651 Arroyo Drive
                                          San Diego, California 92103
                                          Telephone: (619) 696-9006
                                          Facsimile: (619) 564-6665

                                          ***Attorneys for Plaintiff and the Proposed Class***