**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID KAUFFMAN, on behalf of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALLFIRE, INC., a Delaware corporation; and THE SPORTS NETWORK, INC., a New York corporation,<br><br>Defendants. | Case No.: 3:14-cv-1333-H-DHB<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT CALLFIRE'S MOTION FOR SUMMARY JUDGMENT;**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AS TO DEFENDANT CALLFIRE**<br><br>[Doc. Nos. 38, 52] |

Plaintiff David Kauffman filed an amended complaint against CallFire, Inc., and The Sports Network, Inc.[1] ("Defendants") on October 9, 2014, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Doc. No. 10.) On July 2, 2015, Defendant CallFire, Inc. filed a motion for summary judgment. (Doc. No. 38.) On August 17, 2015, Plaintiff filed an opposition to Defendant's motion. (Doc. No. 49.)

---

[1] Defendant The Sports Network has not appeared in these proceedings, and Plaintiff has not requested a default.

On August 24, 2015, Defendant filed a reply to Plaintiff's opposition. (Doc. No. 54.) On August 21, 2015, Plaintiff filed a motion for class certification. (Doc. No. 52.) On September 14, 2015, Defendant filed an opposition to Plaintiff's motion. (Doc. No. 57.) On September 28, 2015, Plaintiff filed a reply to Defendant's opposition. (Doc. No. 58.)

The Court held a hearing on the motions on October 5, 2015. Kas Gallucci, Alexis Wood, and Daniel Shay appeared for Plaintiff, and Michael Hazzard and Adam Bowser appeared for Defendant CallFire. For the reasons that follow, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for class certification as to Defendant CallFire.

## Background

Plaintiff filed an amended complaint on October 9, 2014, alleging that Defendant The Sports Network hired or retained Defendant CallFire to send text messages to his mobile phone using an automatic telephone dialing system ("ATDS") in violation of the TCPA. (Doc. No. 10 ¶ 27.) In its motion for summary judgment, Defendant CallFire argues that it is immune from liability under the TCPA because it is a common carrier and did not initiate the text messages Plaintiff received. (Doc. No. 38-1 at 18-25.) Defendant CallFire also argues that it is not liable because its platform does not constitute an ATDS and that it is immune from liability under the Communications Decency Act, 47 U.S.C. § 230. (Doc. No. 38-1 at 25-29.) Plaintiff counters that CallFire is liable because it has not demonstrated that it is a common carrier. (Doc. No. 49 at 19-20.) Plaintiff also argues that Defendant CallFire is liable because it had notice that its customers were using its service in a way that violated the TCPA and nevertheless permitted those customers to continue using its services. (Id. at 20-24.) Finally, Plaintiff contends that CallFire's platform is an ATDS and that the Communications Decency Act does not apply to this case. (Id. at 26-30.)

Defendant CallFire states that it offers an internet-based platform through which customers, including Defendant The Sports Network, may type a text message and send that message to a list of mobile phone numbers provided by the customer. (Doc. No. 38-

4, Bowser Decl. Ex. C, at 36-40.) The content, timing, and recipients of the messages are determined by the customer. (Id., Bowser Decl. Ex. D, at 62-65.) The messages Plaintiff received via CallFire's service were composed and sent according to this method. (Id., Bowser Decl. Ex. C, at 36-40.) Plaintiff does not dispute these facts. Instead, Plaintiff opposes summary judgment and contends that the Court should certify a class action for violation of the TCPA. (Doc. Nos. 49, 52.)

## Discussion

I.   Legal Standards

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his

pleadings," Anderson, 477 U.S. at 256; but, the nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex, 477 U.S. at 324.

When ruling on a summary judgment motion, the court must make all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court does not make credibility determinations with respect to evidence offered. See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

The Court applies these standards in evaluating Plaintiff's claims under the TCPA. The TCPA states:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service.

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA creates a private right of action for damages for individuals who receive calls in violation of the act. 47 U.S.C. § 227(b)(3). A text message is a "call" under the TCPA. See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009). "[U]sers of [telecommunications] services, not the carriers providing the services, [are] held liable" under the TCPA. In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8776 n.83 (1992); see also Rinky Dink, Inc. v. Elec. Merch. Sys., 2015 WL 778065, at *4 (W.D. Wash. Feb. 24, 2015).

A carrier is not entitled to this exemption if it "was so involved in placing the call as to be deemed to have initiated it." In the Matter of Rules & Regulations Implementing the

Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7980 (2015). When a text messaging service drafts a message and sends that message automatically to phone numbers that were not specifically selected by the service's customer, then the service is deemed to initiate the message and may not avoid liability by claiming that it is merely a carrier. Id. at 7982-83. By contrast, when a text messaging service requires its customers to determine the content, timing, and recipients of a text message, then the service has not initiated the message and is merely serving as a carrier. Id. at 7983-84. See also Rinky Dink, 2015 WL 778065, at *7. "[W]hether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them." 30 FCC Rcd. at 7980-81; see also Rinky Dink, 2015 WL 778065, at *7.

II.     Defendant CallFire's Motion for Summary Judgment

In its motion for summary judgment, Defendant CallFire argues that it is not subject to liability under the TCPA because it is a common carrier and did not initiate the text messages Plaintiff received. (Doc. No. 38-1 at 18-25.) Liability under the TCPA for an internet-based transmitter of text messages turns on the transmitter's degree of involvement in selecting the content, timing, and recipients of a message as well as whether the transmitter had notice of the illegal nature of a message. 30 FCC Rcd. at 7978-84.

A.     Selecting the Content, Timing, and Recipients of Messages

In a July 2015 declaratory ruling, the FCC examined several internet-based transmitters of text messages and clarified what actions would render the transmitter sufficiently involved in selecting the content, timing, and recipients of messages so as to give rise to liability under the TCPA. Id. at 7981-84. By way of illustrating a transmitter that was deemed to initiate messages, the FCC examined a platform known as Glide. Id. at 7982-83. Glide was a video messaging service that, once downloaded to a device, would automatically send a text message to all of the device owner's address book contacts unless the owner opted out. Id. at 7983. Glide composed the text messages, which invited the

1  recipients to also download Glide. Id. Given these facts, the FCC determined that Glide
2  was "so involved in [initiating the text messages] as to be deemed to have made or initiated
3  them." Id.

4     The FCC reached an opposite conclusion when it considered the model used by a
5  service known as TextMe. Id. at 7983-84. Users of TextMe who wished to use text
6  messages to invite their friends to download the service had to take several affirmative
7  steps, including selecting whether to invite all of their contacts, only specific contacts, or
8  none of their contacts. Id. TextMe would then send a text message that it authored to the
9  selected recipients. Id. The FCC expressed concern that the message was composed by
10 TextMe, but it determined that the steps taken by users in deciding whether to send the
11 message were sufficient to prevent the FCC from deeming TextMe to have initiated the
12 message. Id. at 7984.

13    Defendant CallFire's degree of involvement in sending text messages to Plaintiff
14 was even smaller than TextMe's involvement in sending invitational text messages. As
15 was the case with TextMe, Defendant CallFire required its users to take affirmative steps
16 to determine whether, when, and to whom they would send text messages. (Doc. No. 38-
17 4, Bowser Decl. Ex. C, at 36-40; Bowser Decl. Ex. D, at 62-65.) Specifically, "CallFire
18 customers must create their own telephone number contact lists . . . and select when they
19 initiate their own messages." (Doc. No. 38-4, Bowser Decl. Ex. C, at 37.) Plaintiff does
20 not allege that CallFire sent messages to a user's contacts without the user's intervention
21 in a way that would make CallFire similar to Glide. Furthermore, unlike TextMe, "CallFire
22 played no part in drafting the content of the messages." (Doc. No. 38-4, Bowser Decl. Ex.
23 C, at 36.) Thus, CallFire is less involved in initiating text messages than is TextMe. The
24 FCC has determined that TextMe will not be deemed to initiate text messages. 30 FCC
25 Rcd. at 7984. Therefore, the Court will not, based on its involvement (or lack thereof) in
26 selecting the content, timing, and recipients of messages, deem CallFire to initiate text
27 messages. See Rinky Dink, 2015 WL 778065, at *5-*7.
28 ///

B.     Notice of Illegal Activity

In addition to a transmitter's involvement in selecting the content, timing, and recipients of messages, "whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them." 30 FCC Rcd. at 7980-81. The FCC recently explained,

> For example, if the Commission staff notifies a platform provider that its service is being used unlawfully by its clients and the platform provider then allows such usage to continue after this warning, we will consider the fact that the platform provider allowed such usage to continue after having actual notice of the unlawful activity to be a possible indicator that the platform provider is actively participating in the making or initiating of the calls at issue. Of course, we will consider all facts and circumstances surrounding any possible violation(s) before determining how liability, if any, should be applied.

30 FCC Rcd. at 7981 n.110.

Prior to issuing this ruling in the context of text messaging services, the FCC had previously discussed similar issues in the context of facsimile services. Specifically, the FCC determined, "In the absence of [1] a high degree of involvement or [2] actual notice of an illegal use and failure to take steps to prevent such transmissions, common carriers will not be held liable for the transmission of a prohibited facsimile message." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8780 (1992). Previous courts that did not have the benefit of the FCC's recent declaratory ruling applied the rules governing facsimile transmissions, including the rule regarding notice of illegal uses, to the text messaging services provided by Defendant CallFire. See, e.g., Rinky Dink, 2015 WL 778065, at *4; Couser v. Pre-paid Legal Servs., Inc., 994 F. Supp. 2d 1100, 1104 (S.D. Cal. 2014). Because the FCC's recent declaratory ruling states that notice of an illegal use remains relevant in determining whether a text message transmitter will be deemed to have initiated a message, the Court will conduct a

similar inquiry into notice of illegal use in this case.  30 FCC Rcd. at 7980-81.

     Plaintiff argues that Defendant CallFire had actual notice of an illegal use of its service and failed to take steps to prevent that use. (Doc. No. 49 at 15-17, 20-24.) Plaintiff states that he received text messages via Defendant CallFire's service even after CallFire had been served with complaints in this case and related cases. (Doc. No. 49 at 20-24.) A complaint is an allegation of an illegal act, not notice of an illegal act.  See In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials, 2 FCC Rcd. 2819, 2820 (1987).  Indeed, Plaintiff's counsel was the plaintiff who filed one of the fact-intensive complaints that supposedly put Defendant CallFire on notice of Defendant The Sports Network's allegedly illegal activities.  Shay v. CallFire, Inc., No. 3:14-cv-1257-L-WVG, Doc. No. 1 (S.D. Cal. May 20, 2014).  Plaintiff's counsel subsequently voluntarily dismissed that case after CallFire filed a motion to dismiss.  Shay, Doc. No. 4 (June 18, 2014), Doc No. 6 (June 27, 2014), Doc. No. 8 (Sept. 18, 2014).  An allegation of illegal activity that is subsequently withdrawn serves more to disprove than to prove the illegal nature of the activity, and such an allegation is certainly insufficient to qualify as notice that would give rise to TCPA liability.  Plaintiff has not shown that Defendant CallFire received a notice from the FCC regarding illegal activity or other comparable notice.  See 2 FCC Rcd. at 2820; 30 FCC Rcd. at 7981 n.110.  Under these circumstances, Plaintiff has not demonstrated that Defendant CallFire had sufficient notice of any illegal activity to render it an active participant in that activity.

     In light of Defendant CallFire's lack of involvement in selecting the content, timing, and recipients of the messages at issue in this case and its lack of notice of any illegal activity, the Court does not deem Defendant CallFire to have initiated the messages. (Doc. No. 38-4, Bowser Decl. Ex. C, at 36-40; Bowser Decl. Ex. D, at 62-65.)  As a result, the Court concludes that Defendant CallFire is a carrier that did not initiate the messages Plaintiff received.

///

///

C. Defendant CallFire's Other Grounds for Summary Judgment

Defendant CallFire also argues that it is not liable because its platform does not constitute an ATDS. (Doc. No. 38-1 at 25-27.) Specifically, it argues that its platform is not an ATDS because it does not have the present ability to generate random or sequential phone numbers and because it requires human intervention to send messages. (Id.) Some courts have found these factors relevant in absolving text message senders from liability under the TCPA. See, e.g., Marks v. Crunch San Diego, LLC, 55 F. Supp. 3d 1288, 1290-93 (S.D. Cal. 2014); Luna v. Shac, LLC, 2015 WL 4941781, at *2-*5 (N.D. Cal. Aug. 19, 2015). Other courts and the FCC have found them less persuasive. See, e.g., Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012); 30 FCC Rcd. at 7976. Because the Court concludes that CallFire is not liable due to its status as a carrier that did not initiate the messages Plaintiff received, the Court need not address this issue.

Defendant CallFire also argues that it is immune from liability under the Communications Decency Act, 47 U.S.C. § 230. (Doc. No. 38-1 at 27-29.) That act states, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Plaintiff argues that the provision Defendant relies on was meant to absolve computer service providers of liability for the objectionable content their users might publish, whereas the TCPA imposes liability for sending messages using certain technology. (Doc. No. 49 at 29-30.) Again, the Court does not reach this issue because it concludes that CallFire is not liable due to its status as a carrier that did not initiate the messages Plaintiff received. The Court notes, however, that Defendant does not cite any cases applying the Communications Decency Act in a TCPA context.

By demonstrating that it is a carrier that did not initiate the text messages Plaintiff received, Defendant CallFire has negated an essential element of Plaintiff's case. See Celotex, 477 U.S. at 322. Plaintiff has not demonstrated that any disputed fact remains as to whether Defendant CallFire is a carrier or whether it initiated the text messages. See id. Therefore, the Court grants Defendant CallFire's motion for summary judgment.

III.   Plaintiff's Motion for Class Certification

Plaintiff moves to certify three classes of individuals who he alleges suffered harms similar to his own due to their receipt of text messages from Defendant CallFire. (Doc. No. 52-1 at 16.)  Because the Court grants Defendant CallFire's motion for summary judgment, the Court denies Plaintiff's motion for class certification as to Defendant CallFire.

## Conclusion

For the foregoing reasons, the Court grants Defendant CallFire's motion for summary judgment.  The Court denies Plaintiff's motion for class certification as to Defendant CallFire.

**IT IS SO ORDERED.**

DATED: October 7, 2015

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT